```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| FARUQ FRANKLIN, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action<br>No. 11-cv-7229 (JBS/KMW) |
| OFFICER PAUL MINGIN, et al., | |
| Defendants. | **OPINION** |

APPEARANCES:

Mr. Faruq Franklin
915 Apt. B Carl Miller Blvd.
Camden, NJ 08104
    Pro Se Plaintiff

Marvin L. Freeman, Esq.
State of New Jersey
Office of the Attorney General
25 Market Street
P.O. Box 112
Trenton, NJ 08625
    Attorney for Defendants

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

    Plaintiff Faruq Franklin, who is proceeding pro se, brought this action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights in two separate beatings on January 3, 2010 at Bayside State Prison. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. This matter comes before the Court on the motion for summary judgment by

Defendants, Officers Paul Mingin, James Messier, Kelly, and S. Fleetwood. [Docket Item 33.] Defendants allege that Plaintiff's Eighth Amendment rights were not violated and that Plaintiff failed to administratively exhaust his claims before he filed this action. Plaintiff did not file opposition. The Court will grant Defendants' motion because Plaintiff failed to administratively exhaust his claims.

## II. BACKGROUND

### A. Facts

#### 1. The Alleged Physical Altercations

On January 3, 2010, Plaintiff and Defendants were involved in two separate confrontations. (Def. Ex. H, Pl. Dep. 29:3-31:16, Nov. 21, 2013.) Plaintiff was an inmate at Bayside State Prison, and Defendants were corrections officers at the prison.

The first incident occurred when Defendant Mingin attempted to serve a disciplinary charge known as an "on-the-spot" on Plaintiff for being off of his bunk during prisoner count. (Pl. Dep. 28:1-29:2.) Defendant Mingin described the incident in a disciplinary report. (Def. Ex. B at 1.) Mingin wrote that he gave Plaintiff the disciplinary charge sheet to sign, and then Plaintiff said, "I'm not fucking signing this," crumpled up the charge, and threw his pen and the balled-up charge at Mingin. (Id.) Defendant Mingin also reported that the plaintiff "struck" him in the "chest area with his hand." (Id.) Defendant Mingin

2

stated that he, along with four other officers, attempted to restrain Plaintiff, and that Plaintiff became "very combative and had to be taken to the ground." (Id.)

Plaintiff claims he was attempting to sign the disciplinary charge and that the altercation began when Defendant Kelly, without provocation, jumped on Plaintiff's back causing him to collapse to the ground. (Pl. Dep. at 29:3-18.) Plaintiff claims that Defendant Mingin then got on the floor, placed Plaintiff in a headlock, and began punching him in the head. (Id. at 29:18-21.) Plaintiff stated that other officers then came to assist and removed Plaintiff to the infirmary. (Id. 29:21-30:14.)

Plaintiff claims that, when he arrived at the infirmary, he was strip-searched and Defendant Messier initiated the second altercation. (Id. 31:6-16.) Plaintiff claims Defendant Messier attempted to strike Plaintiff with his club. (Id. 31:6-7.) According to Plaintiff, Defendant Messier missed and Plaintiff fell to the ground. (Id. 31:9-10.)  Plaintiff asserts that the officers beat him on his legs and face and that, while he was on the ground "in the fetal position," the officers "stomped" him to the point that he defecated. (Id. 31:10-14.)

During a status conference, the Magistrate Judge asked Plaintiff what kinds of injuries he sustained. (Def. Ex. G, Tr. of Status Conference 8:2-4, Oct. 15, 2013.) Plaintiff stated that he "didn't receive no injuries [sic]" as a result of either

3

altercation aside from a swollen hand "probably from handcuffs bein' too tight." (Id. 8:3-14.)

### 2. Proceedings Against Plaintiff for the Altercations

Plaintiff was administratively and criminally charged for head butting Defendant Messier during the second altercation. (Def. Ex. B at 4 & Ex. D.) He pled guilty to Third Degree Aggravated Assault. (Def. Ex. E at 1.)

In addition, on January 3, 2010, the day of the beatings, Plaintiff was removed from Bayside State Prison, moved to New Jersey State Prison, and placed in the administrative segregation unit. (Def. Ex. K at 4; Pl. Dep. 26:22-27:1.)

### 3. Plaintiff's Alleged Attempt to File Complaints

The New Jersey Department of Corrections provides an inmate handbook that outlines the administrative complaint procedure. (Def. Ex J at 14-16.) According to the Bayside State Prison Inmate Handbook, inmates "must complete and submit a written request for remedy within 10 days of the date the incident/issue occurred." (Def. Ex. J at 16.) The handbook further states that the Administrative Remedy Form "must be deposited in the box marked 'ADMINISTRATIVE REMEDY FORMS.'" (Def. Ex. J at 16.) Plaintiff acknowledges receiving the handbook and being aware of the inmate remedy system (Pl. Dep. 42:1-43:14). Moreover, Plaintiff signed a form upon entering Bayside State Prison acknowledging receipt of the handbook on May 6, 2009. (Def. Ex.

4

I.) Plaintiff also testified that he used the administrative complaint procedure on another occasion regarding the calculation for his release date. (Pl. Dep. 38:18-24; 54:22-55:17.)

Plaintiff was moved to Northern State Prison on May 10, 2011. (Def. Ex. K at 5.) He claims he sent an "inmate remedy form" to Bayside State Prison "while he was in Northern" regarding the January 3, 2010 incidents. (Pl. Dep. 38:22-39:3.)

Plaintiff filed this action on December 13, 2011 while still incarcerated. (Def. Ex. A at 1; Pl. Dep. 40:19-41-3.) He was released from incarceration on May 4, 2013. (Def. Ex. F.)

### B. Procedural History

Defendants filed their motion for summary judgment on March 17, 2014. [Docket Item 33.] The opposition deadline was April 7, 2014 and the motion day was April 21, 2014. Plaintiff has not filed opposition or any request for extension of time to file opposition.

### C. Defendants' Arguments

Defendants argue that Plaintiff's Eighth Amendment rights were not violated because he did not suffer any injuries from the beatings; that Plaintiff failed to administratively exhaust his claims; that Plaintiff has not shown that Defendants had a culpable state of mind; and that Defendants used the necessary amount of force.

**III. STANDARD OF REVIEW**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the case under the governing law. Id.

When the non-moving party bears the burden at trial, the moving party may be entitled to summary judgment by showing "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The Court must grant summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

A plaintiff's failure to respond "is not alone a sufficient basis for the entry of a summary judgment." Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990). There must be a finding by the district court that judgment as a matter of law is "appropriate." Id. In other words, "the district court must determine that the facts

6

specified in or in connection with the motion entitle the moving party to judgment as a matter of law." Id.

**IV. DISCUSSION**

The Court will grant Defendants' motion because Plaintiff failed to administratively exhaust his claims before filing this lawsuit.

Pursuant to 42 U.S.C. § 1997e(a), "no action shall be brought with respect to prison conditions" under 42 U.S.C. § 1983, by a "prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). In assessing whether a plaintiff is bound by the exhaustion constraint of § 1983, the Court must look to the plaintiff's status at the time he filed his complaint. Ahmed v. Dragovich, 297 F.3d 201, 210 (3d. Cir. 2002). A plaintiff incarcerated at the time of filing a complaint pursuant to § 1983 is bound by the exhaustion requirement. Id.

The Third Circuit has determined the grievance procedure set forth in the Department of Corrections Inmate Handbook is an administrative remedy "within the scope of § 1997e(a)'s exhaustion requirement." Concepcion v. Morton, 306 F.3d 1347,

7

1355 (3d Cir. 2002). Finally, § 1997e(a) requires "proper exhaustion" of those administrative remedies. Woodford v. Ngo, 548 U.S. 81, 84 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. at 90.

It is undisputed that Plaintiff was incarcerated at the time he filed his complaint and, thus, the exhaustion rule applies. (Pl. Dep. 40:19-41:3; Def. Ex. K at 5.) The New Jersey Department of Corrections Inmate Handbook for Bayside State Prison states that a written request for remedy must be submitted "within 10 days of the date the incident/issue occurred." (Def. Ex. J at 16.) The Handbook also states that the inmate remedy forms should be "deposited in the box marked 'ADMINISTRATIVE REMEDY FORMS.'" (Id.) Plaintiff acknowledges receiving the handbook and being aware of the inmate remedy process as he had used the inmate remedy procedure on another occasion. (Pl. Dep. 38:18-24; 42:1-43:14; 54:22-55:17).

Plaintiff claims that he filed an inmate remedy form regarding the January 3, 2010 incidents when he was at Northern State Prison. (Pl. Dep. 38:22-39:3.) According to the Department of Corrections progress notes, Plaintiff was moved to Northern State Prison on May 10, 2011. (Ex. K at 5.) Thus, if Plaintiff filed his inmate remedy form from Northern, the form was not filed until at least 15 months after the passage of the 10-day

8

period allowed by the Department of Corrections handbook. Further, Plaintiff has not evinced any evidence that he placed an inmate remedy form in the designated box per the procedure included in the handbook.

Because Plaintiff did not file the appropriate remedy forms within the designated 10-day period, nor has he demonstrated an inability to have timely submitted his remedy form, he is not considered to have "properly exhausted" all of his administrative remedies and thus is precluded from bringing suit under § 1983. See Porter v. Blake, 289 Fed. Appx. 560, 561 (3d Cir. 2008) (affirming summary judgment in favor of Defendant because Plaintiff's grievance was "clearly outside the time requirement" established by the administrative remedy procedure); Hutt v. Hill, Civ. No. 12-144 (LPS), 2014 WL 1202995, at *2-3 (D. Del. Mar. 20, 2014)(granting summary judgment because Plaintiff's grievance, filed twenty-two days after the incident, "was untimely" according to the administrative remedy procedure, which required filing grievances "within seven days"); Burns v. Fike, Civ. No. 12-239, 2013 WL 5874582, at *6 (W.D. Pa. Oct. 31, 2013)(granting summary judgment in favor of Defendant because Plaintiff's grievance was "untimely submitted by one day").

The Court will grant Defendant's motion for summary judgment because Plaintiff failed to administratively exhaust

his claims.[1]

**V.    CONCLUSION**

The court will grant Defendants' motion for summary judgment because Plaintiff failed to administratively exhaust his Eighth Amendment excessive force claims. An accompanying Order will be entered.

**June 18, 2014**                              **s/ Jerome B. Simandle**
Date                                           JEROME B. SIMANDLE
                                               Chief U.S. District Judge

---

[1] Defendants also argue that they did not violate the Eighth Amendment because Plaintiff admitted that he did not sustain any injuries. However, the proper Eighth Amendment test is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). "[A]lthough the degree of injury is relevant for any Eighth Amendment analysis, there is no fixed minimum quantum of injury that a prisoner must prove that he suffered . . . ." Brooks v. Kyler, 204 F.3d 102, 104 (3d Cir. 2000). In evaluating Eighth Amendment excessive force claims, courts must consider: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials; and (5) any efforts made to temper the severity of a forceful response. Id. at 106. Because Plaintiff's failure to administratively exhaust warrants summary judgment, the Court need not conduct this analysis here.